USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DeSimone, *et al.*,

                        Plaintiffs,

            –v–

TIAA Bank, FSB,

                        Defendant.

---

20-cv-6492 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs, who are former and current mortgage loan officers, bring claims against Defendant bank for unpaid wages and overtime under the FLSA and various state laws. Defendant moves to dismiss certain claims as time-barred and to compel certain claims to arbitration. Plaintiffs move to conditionally certify the action as a collective under the FLSA. For the reasons that follow, Defendant's partial motion to dismiss and motion to compel are GRANTED. Plaintiffs' motion to conditionally certify a FLSA collective is GRANTED IN PART and DENIED IN PART.

## I.     BACKGROUND

Named Plaintiffs Nicholas DeSimone, Patrick Gardner, Mohammad Hussain, Paul Malstrom, Stephen Gallagher, Craig Paladeau, and Cory Benner bring claims against Defendant TIAA Bank, FSB on behalf of themselves and all other similarly situated employees for unpaid wages, overtime compensation, and other relief under the Fair Labor Standards Act and the laws of New York, New Jersey, California, Maryland, Washington, Pennsylvania, and Oregon. Dkt. No. 67. Plaintiffs were employed as Retail Loan Officers in various states and performed the

1

functions of originating and producing residential mortgage loans from Defendant TIAA Bank. *Id.* ¶ 23.  Plaintiffs allege that Defendant misclassified them as "outside sales" employees who were exempt from overtime pay and failed to pay them for overtime hours worked.  *Id.* ¶ 131.

Before this action was filed, a related case *Lesser v. TIAA Bank, FSB*, 1:19-cv-01707-AJN (S.D.N.Y.) was filed in this Court on February 22, 2019.  The complaint in that case contained nearly identical allegations under the FLSA and the laws of New York and New Jersey to the complaint that would later be filed in this case.  *See Lesser*, 1:19-cv-01707, Dkt. No. 2.  On October 20, 2020, the Court approved a settlement in *Lesser* and dismissed the case with prejudice.  *See id.*, Dkt. No. 61.  Prior to that settlement approval, on August 14, 2020, named Plaintiffs DeSimone, Gardner, Hussain, and Malstrom filed the complaint in this matter against Defendant alleging wage and overtime claims under the FLSA and the laws of New Jersey (DeSimone), New York (Hussain), California (Gardner), and Maryland (Malstrom).  Dkt. No. 1.

After Defendant filed an initial motion to dismiss Plaintiffs' complaint in this case, Plaintiffs filed an Amended Complaint on October 29, 2020, which is now the operative complaint.  Dkt. No. 67.  The Amended Complaint added named Plaintiffs Gallagher, Paladeau, and Benner. *Id.*  In addition to FLSA claims, the added named plaintiffs assert claims under the laws of Pennsylvania (Gallagher), Washington (Paladeau), and Oregon (Benner).  *Id.*

Defendant then filed a partial motion to dismiss the Amended Complaint, in which it argues that certain state law claims of certain plaintiffs are barred by the applicable statutes of limitations.  Dkt. No. 83.  Defendant also filed a motion to compel arbitration with respect to certain claims.  Dkt. No. 94.  Plaintiffs filed a motion to conditionally certify a collective action under § 216(b) of the FLSA.  Dkt. No. 111.  These motions are fully briefed.

## II.    MOTION TO DISMISS

2

Defendants move to dismiss claims on the grounds that they are untimely.  First, Defendant argues that the statute of limitations period for the New Jersey and Oregon claims is two years instead of six.  Additionally, Defendant argues that, other than for Plaintiffs' New York and New Jersey claims, Plaintiffs' Amended Complaint improperly asserts that the statute of limitations for Plaintiffs state law claims were tolled by the filing of *Lesser*.  As discussed below, the Court agrees with Defendant that some of Plaintiffs' claims are untimely.  Moreover, while Plaintiff raises the possibility of equitable tolling in response to Defendant's motion, Plaintiffs' speculation without plausible allegation that a potential equitable tolling argument may become available after discovery does not preclude dismissal of Plaintiffs' untimely claims.

### A.  Legal Standard

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he statute of limitations is ordinarily an affirmative defense that must be raised in the answer." *Ellul v. Congregation of Christian Bros*., 774 F.3d 791, 798 n.12 (2d Cir. 2014). However, although "a statute of limitations bar is an affirmative defense, the Court may consider the defense at the motion to dismiss stage because 'a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint.'"  *Newmann v. Mediterranean Shipping Co*., No. 18 CIV.10518 (AJN), 2019 WL 4805864, at *2 (S.D.N.Y. Sept. 30, 2019) (citing *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003)).  Thus, the claims may be dismissed if the "complaint clearly shows the claim is out of time." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

### A. The applicable statute of limitations for Plaintiffs' Oregon and New Jersey claims is two years

Plaintiffs state claims in their Amended Complaint under Oregon and New Jersey law going back six years.  As discussed below, the statute of limitations for these claims is two years.

#### 1. Oregon

Oregon law holds that there is a six-year statute of limitations for any "action upon a liability created by statute, other than a penalty or forfeiture, excepting those mentioned in" Or. Rev. Stat. 12:110.  Or. Rev. Stat. 12:110(3) provides that "[a]n action for overtime or premium pay or for penalties or liquidated damages for failure to pay overtime or premium pay shall be commenced within two years."  Or. Rev. Stat. Ann. § 12.110.

In Plaintiff's Amended Complaint, named Plaintiff Benner asserts claims on behalf of a putative class for unpaid wages under Oregon law dating back six years prior to *Lesser*.  Dkt. No. 67 at 3.  As explained below, any of Plaintiffs' claims brought under Oregon law were not tolled by *Lesser*.  Moreover, to the extent Plaintiffs seek to recover claims for unpaid overtime or premium pay for more than two years prior to the filing of Plaintiff's complaint, those claims are dismissed as time-barred per the express terms of Or. Rev. Stat. 12:110(3).

#### 2. New Jersey

New Jersey law currently provides that "[n]o claim for unpaid minimum wages[] [or] unpaid overtime compensation . . .  shall be valid with respect to any such claim which has arisen more than six years prior to the commencement of an action for the recovery thereof."  N.J. Stat. Ann. § 34:11-56a25.1.  However, this version of the statute was enacted on August 6, 2019. Prior to that amendment, the limitations period for unpaid minimum wage and overtime claims in this provision was two years.  *See Magee v. Francesca's Holding Corp.,* No. CV 17-565 (RBK/JS), 2020 WL 2768679, at *1 (D.N.J. May 28, 2020).

Plaintiffs argue that the legislative amendment applies retroactively and therefore the limitations period for their claims is six years and not two.  New Jersey law requires that courts abide by the "general principle of statutory construction that courts favor the prospective application of statutes."  *Phillips v. Curiale*, 128 N.J. 608, 615, 608 A.2d 895, 898 (N.J. 1992).  To determine whether a New Jersey statute should be applied retroactively, courts are to consider "whether the Legislature intended to give the statute retroactive application" and "whether retroactive application of that statute will result in either an unconstitutional interference with vested rights or a manifest injustice."  *James v. New Jersey Manufacturers Ins. Co*., 216 N.J. 552, 563, 83 A.3d 70, 77 (N.J. 2014) (citation omitted).

When interpreting the New Jersey statute to determine whether it applies retroactively, the Court must look to "look to the state's decisional law."  *Santalucia v. Sebright Transp., Inc*., 232 F.3d 293, 297 (2d Cir. 2000).  If the highest court of the state has not spoken on the matter, the Court must "carefully . . .  predict how" it "would resolve the uncertainty or ambiguity."  *Id.* (citation omitted).  Moreover, if "the federal appeals court in the circuit where the state is located has essayed its own prediction of the course of state law" then "the federal courts of other circuits should defer to that holding."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig*., 415 F. Supp. 2d 261, 269 (S.D.N.Y. 2005) (cleaned up).  If not, then the opinions of district courts in a state are also a source of persuasive authority on the meaning of that state's law.  *See Sloley v. VanBramer*, 945 F.3d 30, 42 (2d Cir. 2019).

Neither the Supreme Court of New Jersey, the Third Circuit, nor the Second Circuit have spoken on the issue of whether the statute applies retroactively.  However, all the District Court of New Jersey decisions to consider the issue have held that it does not.  *See Doe v. Bloomberg L.P.*, No. CV 19-9471 (FLW), 2021 WL 1578358, at *2 (D.N.J. Apr. 22, 2021); *Magee,* 2020

WL 2768679, at *2; *Saiyed v. Archon, Inc.,* Civ No. 16-9530, 2020 WL 7334190, at *5 n.6

(D.N.J. Dec. 14, 2020); *Vasquez v. Spain Inn, Inc*., Civ No. 19-452, 2019 WL 5258197, at *3 n.6

(D.N.J. Oct. 17, 2019); *Buchspies v. Pfizer, Inc*., Civ. No. 18-16083, 2019 WL 5078853, at *4

n.6 (D.N.J. Oct. 10, 2019).  Along with other reasons, those courts held the amendment was

prospective because the legislature did not explicitly state its intent for the statute to apply

retroactively.  *See Doe*, 2021 WL 1578358, at *2.  To the contrary, the amendment states that

"[t]his act shall take effect immediately," which is the kind of language that the Supreme Court

of New Jersey has held indicates an intent for a statute to apply prospectively.  *Id.* at *6.  The

Court agrees with the reasoning of this growing consensus of the District of New Jersey for the

reasons stated in those opinions and does not find any of the arguments presented in Plaintiffs'

opposition to be persuasive.  Accordingly, the Court concludes that the applicable statute of

limitations for Plaintiffs' New Jersey claims is two years.

### B. The state law claims of Plaintiffs Gardner, Malstrom, Gallagher, Paladeau, and Benner do not relate back to the *Lesser* suit

In Plaintiffs' complaint, they assert that the statutes of limitations for all of their state law

claims were tolled by the filing of the *Lesser* complaint.  Defendant does not contest that the

limitations period for the claims of Plaintiffs DeSimone (New Jersey) and Hussain (New York)

were tolled by *Lesser*.  Under the *American Pipe* tolling doctrine, the filing of a class action

"tolls the running of the statute [of limitations] for all purported members of the class[,]" and the

*Lesser* lawsuit contained a near identical New York and New Jersey class.  *American Pipe &*

*Construction Co. v. Utah*, 414 U.S. 538, 553 (1974).  However, Defendant argues in its motion

that the state law claims of the remaining Plaintiffs were not subject to *American Pipe* tolling and

were not otherwise tolled by *Lesser*.  In response, Plaintiffs contend that the state law claims of

these Plaintiffs were effectively tolled by *Lesser* because their complaint relates back to the complaint in the *Lesser* action under Federal Rule of Civil Procedure 15(c).

Federal Rule of Civil Procedure 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out –or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When an "amended pleading 'relates back' to the date of a timely filed original pleading," it "is thus timely even though it was filed outside an applicable statute of limitations period." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

Plaintiffs contend that because this lawsuit and the *Lesser* lawsuit were substantially similar and in fact accepted by this Court as related, the claims in this lawsuit "relate back" to the filing of the complaint in *Lesser* under Federal Rule of Civil Procedure 15(c). However, just because cases are accepted as "related" does not mean that one "relates back" to the other. Rule 15 clearly states that a subsequent "pleading" can relate back to an "*original* pleading." Fed. R. Civ. P. 15(c)(1)(B) (emphasis added). Plaintiff cites no binding authority for the proposition that a pleading in one case can relate back not only to an original version of that pleading but to a different pleading in a separate case, and multiple courts in this district have persuasively rejected that argument. *See City of New York v. FedEx Ground Package Sys., Inc.,* 351 F. Supp. 3d 456, 474 (S.D.N.Y. 2018); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *159 (S.D.N.Y. Oct. 20, 2015); *Reliance Ins. Co. v. PolyVision Corp.,* 292 F. App'x 106, 108 (2d Cir. 2008) (summary order). Plaintiffs' claims therefore do not relate back to the complaint in the *Lesser* suit.

### C.  Plaintiffs' speculation of potential grounds for equitable tolling does not preclude dismissal

In opposing the Defendant's motion, Plaintiffs also raise the issue of equitable tolling. Equitable tolling is a doctrine that "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances," *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (citation omitted), and applies only "in rare and exceptional circumstance[s] . . . in which a party is prevented in some extraordinary way from exercising his rights[.]" *Zerilli-Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003) (cleaned up).  Plaintiffs argue that the Court should "decline to dismiss any claims at this early juncture due to other circumstances which warrant equitable tolling" and "will require a full record and discovery prior to dispositive action."  Dkt. No. 93 at 1.  Specifically, Plaintiffs state that (1) they "intend to show" after discovery that during the *Lesser* lawsuit and an earlier related lawsuit, *West, et al. v. Everbank Financial Corp.*, plaintiffs were pressured into signing declarations stating that they were exempt from the wages they now claim, and (2) Plaintiffs state they intend to seek discovery on whether Defendant failed to post notices advising Plaintiffs of their coverage under the FLSA and state labor laws. *Id.* at 15.

Although a statute of limitations argument is an affirmative defense, it is settled law that a complaint may be dismissed on statute of limitations grounds if the "complaint clearly shows the claim is out of time." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).  If it is clear from the face of the complaint that claims would otherwise be untimely but for equitable tolling, Plaintiffs must provide some factual basis to support the application of equitable tolling or their claims will be dismissed.  *See Quinn v. United States*, No. 20-CV-3261 (KMK), 2021 WL 738756, at *6 (S.D.N.Y. Feb. 25, 2021) ("Plaintiff has failed to allege any facts that would justify [equitably] tolling the statute's limitations period, and his Complaint must therefore be dismissed for this

reason."); *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015); *Donoghue v. Am. Skiing Co.*, 155 F. Supp. 2d 70, 74 (S.D.N.Y. 2001); *see also Ganley v. City of New York*, 734 F. App'x 784, 786 (2d Cir. 2018) (summary order) (affirming dismissal of a complaint as time-barred where plaintiff failed to show that equitable tolling applied).

As Plaintiffs concede, they do not provide any factual allegations regarding the potential bases for equitable tolling in their amended complaint.  In fact, Plaintiffs already had one opportunity to amend in response to the Defendant's statute of limitations arguments and declined to provide factual allegations supporting equitable tolling.  Instead, Plaintiffs raise these potential bases for equitable tolling for the first time in their opposition to Defendant's motion. Although some courts in this district have required that plaintiffs seek leave to amend their complaint to include factual support for equitable tolling, *see Guo*, 95 F. Supp. 3d at 526; *Chao v. Xanadu Boutique, Inc.*, 380 F. Supp. 2d 134, 136 (E.D.N.Y. 2005), others have been willing to consider facts asserted in the briefings or in supplemental affidavits, *see Quinn v. United States*, No. 20-CV-3261 (KMK), 2021 WL 738756, at *6 (S.D.N.Y. Feb. 25, 2021); *Mira v. Kingston*, 218 F. Supp. 3d 229, 237 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017) (still dismissing).

Even if the Court were to consider the arguments raised in Plaintiffs' opposition, however, they are insufficient to create a factual issue with respect to equitable tolling that would preclude dismissal.  To support equitable tolling, Plaintiffs need to assert facts showing that they were precluded from timely filing their claims.  However, Plaintiffs do not "assert" any facts at all, but instead state they "intend to show through discovery" and "seek discovery to demonstrate" these potential grounds for equitable tolling.  Mere "speculation" is insufficient to "to show the existence of 'rare and exceptional circumstances' to warrant equitable tolling."

*Mejia v. United States*, 862 F. Supp. 2d 263, 276 (E.D.N.Y. 2012).   Prior to proceeding to discovery, Plaintiffs are required to make plausible factual allegations that, if true, would entitle them to relief.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564 (2007).  If mere conjecture were sufficient to prevent dismissal on statute of limitations grounds, then any plaintiff could avoid dismissal of properly time-barred claims and force their opponent into discovery.  The pleading rules are designed to prevent "fishing expeditions" of this sort.  *See Utts v. Bristol-Myers Squibb Co.,* 251 F. Supp. 3d 644, 673 (S.D.N.Y. 2017), *aff'd sub nom Gibbons v. Bristol-Myers Squibb Co*., 919 F.3d 699 (2d Cir. 2019).

Additionally, "a litigant seeking equitable tolling cannot rely on 'conclusory and vague claim[s]'" to survive a motion to dismiss. *Mandarino v. Mandarino*, 408 F. App'x 428, 430 (2d Cir. 2011) (summary order) (citing *Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir.2000)); *accord Webster v. Potter*, 746 F. Supp. 2d 635, 641 (S.D.N.Y. 2010).  Plaintiffs' potential equitable tolling defenses are entirely conclusory.  Plaintiffs provide no facts to support that Defendant "failed to post any notices" and "[c]oerced" employees into signing the declarations.

In sum, Plaintiffs' argument that the Court should delay dismissing Plaintiffs' time barred claims until after they have had a chance to discover potential equitable tolling defenses is denied.

### D.  Summary

For the reasons stated above, the Court concludes that the statute of limitations for Plaintiffs' New Jersey and Oregon claims is two years, and that the statute of limitations for Plaintiffs' state law claims other than New York and New Jersey were not tolled until the date Plaintiffs asserted those claims in this case.  Further, Plaintiffs' speculative equitable tolling

argument is insufficient to preclude dismissal of their claims that are clearly time-barred from the face of the complaint.

Therefore, Plaintiff DeSimone's claims for unpaid wages prior to February 22, 2017, i.e., two years preceding the filing of the *Lesser* lawsuit, are dismissed as time barred. Plaintiff Gardner's claims for unpaid wages prior to August 14, 2016, i.e., four years preceding the date of the filing of his claims in this case, are dismissed as time barred. Plaintiff Malstrom's claims for unpaid wages prior to August 14, 2017, i.e., three years preceding the date of the filing of his claims in this case, are dismissed as time barred. Plaintiff Gallagher and Paladeau's claims for unpaid wages prior to October 20, 2017, i.e., three years preceding the date of the filing of their claims in this case, are dismissed as time barred. And finally, Plaintiff Benner's claims for unpaid wages prior to October 20, 2018, i.e., two years prior to the filing of his claims in this case, are dismissed as time barred.

## III.   MOTION TO COMPEL ARBITRATION

Defendant moves to compel arbitration of the claims of named Plaintiffs Gardner, Hussein, and Benner, as well as any putative class or opt-in plaintiffs, that pre-date December 1, 2016. According to Defendant, these Plaintiffs were subject to valid and enforceable arbitration agreements up until that date. Plaintiffs claim that Defendant has waived its right to compel arbitration by pursuing litigation in this Court and that the motion to compel should be denied on the merits.

### A.  Waiver

As an initial matter, Plaintiffs contend that Defendant has waived its right to compel arbitration by first filing a motion to dismiss. A party can waive its right to arbitrate by "engag[ing] in protracted litigation that prejudices the opposing party." *Tech. in P'ship, Inc. v.*

*Rudin*, 538 F. App'x 38, 39 (2d Cir. 2013) (citation omitted).  However, "[f]ederal policy strongly favors arbitration, and waiver of the right to arbitrate 'is not to be lightly inferred.'"  *Pierre v. Rochdale Vill. Inc.,* No. 18CV6383MKBST, 2020 WL 6799635, at *6 (E.D.N.Y. Nov. 19, 2020) (quoting *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020)).  In determining whether a party has waived its right to arbitration, courts are to consider factors such as "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, 764 F. App'x 105, 107 (2d Cir. 2019) (cleaned up).  Importantly, "[t]he key to a waiver analysis is prejudice," *Sutherland v. Ernst & Young, LLP*, 600 F. App'x 6, 8 (2d Cir. 2015), and "delay in seeking arbitration does not create a waiver unless it prejudices the opposing party." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp*., 67 F.3d 20, 25 (2d Cir. 1995).

There is no basis for the Court to determine that Defendant waived its right to compel arbitration.  Defendant filed its motion to compel sixty-six days after Plaintiffs' filed their original complaint.  Dkt. No. 1, 59.  To say that Defendant engaged in "protracted" litigation before filing its motion to compel approximately two months into the lawsuit is disingenuous. *See Leadertex, Inc.*, 67 F.3d at 26 (finding seven months to be an undue delay).  Plaintiffs have not shown that they expended significant resources on discovery or otherwise litigating the claims at issue during this time. Because the motion to compel only applies to some of the claims and only for a subset of Plaintiffs, Plaintiffs' case will continue regardless of whether the motion is granted.  Thus, there has been very little prejudice to Plaintiffs, if any, from having pursued this litigation in court to date.

**B.  The arbitration agreements**

Plaintiffs also bring challenges related to the existence and validity of the arbitration agreements.  The Federal Arbitration Act requires that any "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate" and reflects the "liberal federal policy favoring arbitration agreements."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 625 (1985) (citations omitted).  Therefore, "federal courts [are] to enforce privately made agreements to arbitrate as they would any other contract."  *Nunez v. Citibank, N.A*., No. 08 CV. 5398 (BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009) (quotations omitted).

When presented with a motion to compel arbitration, the Second Circuit has instructed that districts courts "first . . . must determine whether the parties agreed to arbitrate," then "must determine the scope of that agreement," and then "if federal statutory claims are asserted, . . . must consider whether Congress intended those claims to be nonarbitrable."  *Genesco, Inc. v. T. Kakiuchi & Co*., 815 F.2d 840, 844 (2d Cir. 1987) (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626-27).  While Plaintiffs do not dispute that the scope of the arbitration agreement covers their FLSA claims, they argue that Defendant has not met its burden of showing that an agreement was formed in the first place and that, even if the arbitration agreements were executed, they are unconscionable and should not be enforced.  Plaintiffs are incorrect for the reasons discussed below.

### 1.    The parties agreed to arbitrate

The Court must first decide the threshold issue of "whether an agreement to arbitrate has been made" in the first place. *Applied Energetics, Inc. v. NewOak Capital Markets, LLC,* 645 F.3d 522, 526 (2d Cir. 2011).  For this inquiry, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.  *Id.* (citing 9 U.S.C. § 4.).  In deciding whether there is a genuine issue of fact as to whether the parties agreed to arbitrate, courts are to "consider[] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits' . . .  and draw[] all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 74 (2d Cir. 2017) (citations omitted).

 The party seeking to compel arbitration must meet their "initial burden of demonstrating that an agreement to arbitrate was made." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010).   Then, like at summary judgment, "[i]f the moving party carries its initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact." *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011).  "[A] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of its claim in order to precipitate the trial contemplated by 9 U.S.C. § 4.  *DuBois v. Macy's E. Inc*., 338 F. App'x 32, 33 (2d Cir. 2009) (quotations and citation omitted).

In support of their motion to compel arbitration, Defendant submits the TIAA Bank 2013 and 2014 Performance Guides, which contain the following arbitration clause: "Any disputes

relating to or arising under or in connection with this Guide shall be submitted to mandatory arbitration in Duval County, Florida, in accordance with the Commercial Rules of the American Arbitration Association then in effect."  Dkt. Nos. 95-1 (Def. Ex. A), 95-2 (Def. Ex. B).  Defendant also submitted copies of signed acknowledgments of receipt of the Guide by named Plaintiffs Gardner, Hussain, and Benner.  Dkt. Nos. 95-5 (Ex. E), 95-6 (Ex. F), 95-7 (Ex. G).

The Court determines that Defendant has met its burden of demonstrating that the Plaintiffs received and accepted the arbitration agreements.  Plaintiffs contend that, with respect to Plaintiff Gardner and Plaintiff Hussain, Defendant failed to present admissible evidence establishing that they received those documents.  Specifically, Plaintiffs argue that the signed acknowledgements are inadmissible hearsay under Federal Rule of Evidence 802.  However, "Plaintiffs' arguments regarding the type and format of Defendant[]'[s] evidence do not create a genuine issue of material fact as to whether the parties entered into an arbitration agreement" in this case.  *See Worthington v. JetSmarter, Inc.,* No. 18 CIV. 12113 (KPF), 2019 WL 4933635, at *5 (S.D.N.Y. Oct. 7, 2019).  Even if the documents in question did constitute hearsay, a party seeking to compel arbitration may rely on hearsay so long as the evidence will be available in an admissible form at trial.  *Id.* at *5 n.3 (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)).  The Court sees no reason why Defendant would be unable to provide admissible evidence of Plaintiffs receipt of these Guides at trial.

Nor do Plaintiffs contest that such evidence would be available, considering that they do even not dispute that they agreed to arbitrate.  "To make a genuine issue" of material fact that a party agreed to arbitrate, there must be "an unequivocal denial that the agreement had been made," along with supporting evidence.  *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981).   Not only have Plaintiffs failed to submit any evidence

opposing the motion, they do not dispute that these Plaintiffs (or any Plaintiffs) received the applicable Guides during the periods that they were employed. Therefore, the Court determines that there is no genuine dispute that the arbitration agreements were formed.

> **2.    The arbitration agreements are valid and enforceable under the Federal Arbitration Act**

Next, Plaintiffs argue that even if the arbitration agreements were formed, they are unenforceable because they (1) reference the Commercial American Arbitration Association rules instead of the Employment rules and (2) require that arbitration be held in Duval County, Florida. Plaintiffs present two legal theories for why these provisions render the agreement unenforceable.

 Plaintiffs first theory is that the arbitration agreements should not be enforced because they are unconscionable. According to Plaintiffs, even though Plaintiffs do not contend that the Commercial Rules *would* actually apply, Plaintiffs argue that the reference to these rules *could* lead a Plaintiff to believe that there would be a heightened arbitration filing fee cost of $925 instead of $300 and that they would have to split the costs of arbitration with Defendant. Plaintiffs state that this provision discourages employees from filing claims for arbitration and thus renders the agreement "unconscionable."

Plaintiffs have not meaningfully argued that the agreement is unconscionable. Unconscionability is an issue of contract validity under state law, and in order to determine if an arbitration agreement is unconscionable, the Court must first determine which state's law applies to the agreement. *See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003); *Mehler v. Terminix Int'l Co. L.P.,* 205 F.3d 44, 48 (2d Cir. 2000). Plaintiffs do not address which specific state law applies to the dispute under choice-of-law principles, nor do they cite a *single* case on the law of unconscionability from any state. To the extent Plaintiffs are

in fact asserting that the arbitration agreements are unconscionable under state's law, the Court deems that argument abandoned or, at the very least, wholly unpersuasive. *See Rosu v. City of New York*, No. 11 CIV. 5437 DAB, 2012 WL 6582534, at *8 (S.D.N.Y. Dec. 13, 2012), *aff'd,* 742 F.3d 523 (2d Cir. 2014) (denying a motion where the proponents "cite[d] to no case law.").

Plaintiffs second theory is that the arbitration agreements prevent them from vindicating their statutory rights. Plaintiffs note that, in addition to referencing the AAA Commercial rules, the agreements require that arbitration proceed in Duval County, Florida, despite the fact that the named Plaintiffs and majority of putative class or opt-in plaintiffs reside in other states. According to Plaintiffs, these are barriers that prevent Plaintiffs from vindicating their FLSA claims.

This theory fails as well. Plaintiffs are invoking a "judge-made exception to the FAA" that "allow[s] courts to invalidate agreements that prevent the 'effective vindication' of a federal statutory right." *Am. Exp. Co. v. Italian Colors Rest*., 570 U.S. 228, 235 (2013). This rule requires that courts should decline to enforce an arbitration agreement that by its own terms "forbid[s] the assertion of certain statutory rights." *Id.* at 236. The threshold for demonstrating that an agreement should not be enforced is high, and so long as there is an "adequate mechanism" for the party to "vindicate its statutory cause of action," the exception will not apply. *Mitsubishi Motors Corp.*, 473 U.S. at 636-37.

Neither the reference to the Commercial AAA rules nor the designation of Duval County, Florida as the arbitral forum prevents Plaintiffs from effectively vindicating their statutory rights. Because Plaintiffs are the ones "seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive[,]" they "bear[] the burden of showing the

17

likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79,

81 (2000). They have not met this burden. Even if reference to the Commercial AAA rules

could make it appear to some Plaintiffs that they might have to pay higher filing fees and split

the cost of arbitration, the Supreme Court has held that the "filing and administrative fees

attached to arbitration" do not prevent the effective vindication of statutory rights unless they are

"so high as to make access to the forum impracticable." *Am. Exp. Co. v. Italian Colors

Restaurant*, 570 U.S. 228, 236 (2013). Again, Plaintiffs do not contend that any of the

Commercial AAA rules would even apply, and even if they did, Plaintiffs have not explained

how a heightened minimum filing fee $925 instead of $300 or splitting the costs of arbitration

with Defendant makes arbitration impracticable. The Supreme Court has made clear that "the

fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute

the elimination of the *right to pursue* that remedy." *Id.*

Similarly, designation of the arbitral forum in Duval County, Florida also does not

prevent Plaintiffs from effectively vindicating their rights. While traveling to Florida will likely

entail some expense, Plaintiffs have not explained how that expense would make arbitration

impracticable. Indeed, the Supreme Court has rejected the notion that traveling significant

distances alone makes an arbitral forum impracticable. *See Vimar Seguros y Reaseguros, S.A. v.

M/V Sky Reefer,* 515 U.S. 528, 530 (1995) (requiring arbitration in Japan). Plaintiffs also argue

that having to arbitrate in Duval County prevents them from effectively vindicating their rights

because enforcement of arbitration-related subpoenas is limited to a 100-mile enforcement under

Federal Rule of Civil Procedure 45. Thus, according to Plaintiffs, their ability to conduct

discovery will be limited. As an initial matter, the Supreme Court has held that just because

"discovery allowed in arbitration is more limited than in the federal courts" does not mean that

Plaintiffs do not have "a fair opportunity to present their claims." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).  "[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id.* (cleaned up). Plaintiffs do not cite a single case supporting their claim that an arbitrable forum is inadequate if it falls outside the proximity limits of Rule 45.  In any event, Plaintiffs concern at this point is academic, as they have not identified any key witnesses who would be unwilling to attend the hearing or produce documents, in particular in light of Defendant's willingness to conduct discovery remotely.

Lastly, Plaintiffs request that, in the event the Court enforces the agreements, the Court "blue pencil" the arbitration provision to require use of the AAA Employment rules and to require that the claims be arbitrated within 50 miles of the city where the employee formerly worked.  This request is denied. Plaintiffs do not cite a single case supporting their suggestion that the Court has the power write in new provisions to the parties' agreement to which Defendant never consented, and indeed courts generally "are not empowered to re-write" arbitration agreements.  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, No. 20-2748-CV, 2021 WL 3118947, at *11 (2d Cir. July 23, 2021).   The arbitration agreement is valid and the Court will enforce its terms.

In sum, the arbitration agreements are enforceable and provide Plaintiffs with an adequate mechanism for enforcing their statutory rights despite the reference to the AAA Commercial Rules and the designation of Duval County, Florida as the arbitral forum.

### C.  Summary

For the reasons discussed above, the Court holds that Defendant has not waived its right to compel arbitration and that Plaintiffs are required to arbitrate their claims.  Defendants have

demonstrated that an agreement was formed and Plaintiffs have failed to create a genuine dispute of material fact on that issue.  Moreover, the fact that the agreement contains provisions requiring arbitration in Florida and referencing the AAA Commercial Rules does not render the agreement unconscionable or prevent Plaintiffs from vindicating their FLSA claims.

## IV.    MOTION TO CONDITIONALLY CERTIFY FLSA COLLECTIVE

Plaintiffs move to conditionally certify a collective action under § 216(b) of the FLSA for current and former Retail Loan Officers, Branch Sales Managers, and Retail Sales Managers.

### A.  Legal Standard

The FLSA authorizes workers to sue on behalf of both themselves and "other employees similarly situated." 29 U.S.C. § 216(b). The Second Circuit has explained that "plaintiffs are similarly situated" for the purposes of § 216(b) "to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."  *Scott v. Chipotle Mexican Grill, Inc*., 954 F.3d 502, 516 (2d Cir. 2020).  So long as there are material similarities, any dissimilarities should not defeat the collective treatment.  *Id.*  If plaintiffs are similarly situated in this way, the district court may certify a collective action and facilitate notice to potential plaintiffs of their opportunity to opt-in as represented plaintiffs.  *See Vargas v. HSBC Bank USA, N.A.,* No. 11-cv-7887 (DAB), 2012 WL 10235792, at *3 (S.D.N.Y. Aug. 9, 2012) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

Courts in this circuit apply a two-step method to determine whether a collective action should be certified.  *Myers*, 624 F.3d at 554-55. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Id*. at 555.  At the second step, "the district court will, on a fuller record, determine whether a so-called

'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id*. If they are not, the action may be "de-certified," and the opt-in plaintiffs' claims will be dismissed without prejudice. *Id*.

This case is at step one of the collective certification process. At this stage, the Court is to determine only whether potential opt-in plaintiffs may be similarly situated to the named plaintiffs in this case. *Meyers*, 624 F.3d at 555. The burden of proof to satisfy this threshold is low. *Id*. Plaintiffs need only "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id*. (cleaned up). In the context of a FLSA exemption case, this means Plaintiffs need to provide "some showing that there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions" and "who are classified as exempt pursuant to a common policy or scheme." *Id*. (cleaned up).

To meet this low burden, "[t]he plaintiff may adduce evidence through its own pleadings, affidavits, and declarations, including any hearsay statements contained therein." *Morris v. Lettire Constr. Corp.*, 896 F.Supp.2d 265, 269 (S.D.N.Y. 2012) (citation omitted). The Court will not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (citation omitted).

### B.  Conditional Certification is appropriate for the RLOs

The Court holds that Plaintiffs have made their "modest factual showing" that other potential opt-in plaintiffs may be similarly situated to them for those plaintiffs who worked as Retail Loan Officer. *Scott*, 954 F.3d at 515.

In support of their motion, Plaintiffs submitted TIAA Bank's 2016 and 2018 compensation plans, which demonstrate that it was company policy that (1) RLO's were subject to the same compensation scheme, i.e., paid on a commission basis in the form of a bi-monthly paycheck, and (2) were "classified as exempt" from overtime pay "under the outside sales exemption" of the FLSA.  Dkt. No. 1, 95-3.  Moreover, Plaintiffs submitted sworn declarations from themselves and opt-in Plaintiffs.  *See* Dkt. No. 112 (Exs. 1-28).  These declarations were form documents with blank spaces for Plaintiffs to fill in their names, office location, and the number of hours worked per week.  *Id.*  The form documents stated that the plaintiff or opt-in plaintiff performed the job duties of soliciting clients and guiding them through the loan process, and that the "vast majority" of this work was performed by phone or computer either at home, at a branch office, or at "some other fixed location."  *Id.*

For the purposes of conditional certification, this evidence demonstrates that Plaintiffs are similar in ways that are "material" to the disposition of their FLSA claim.  First, Plaintiffs have shown that, per express company policy, they were exempt from overtime, and that purported fact is material to their FLSA claims.  Second, they have presented evidence showing that as part of their job duties they were expected to work more than 40 hours a week and *did* in fact work more than 40 hours a week.  This purported fact is also material to their FLSA claims.

And third, they have presented some evidence demonstrating that they performed the "vast majority" of their work over the phone or computer either at home, at the local branch, or at some other fixed location.  This purported fact is also material to their FLSA claims, because if true it tends to demonstrate that Plaintiffs did not satisfy the outside sales exemption.  That exemption requires that the employee be "customarily and regularly engaged away from the employer's place or places of business in performing" their "primary duty" of "making sales." 29

C.F.R. § 541.500(a).  For the purposes of this exemption, an "employer's place of business" includes "any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales . . . even though the employer is not in any formal sense the owner or tenant of the property."  29 C.F.R. § 541.502.  If Plaintiffs spent the vast majority of their time at home, the branch, or another fixed location, that would tend to suggest that they were not "customarily and regularly engaged away from" Defendant's place of business.

Therefore, these factual similarities make conditional certification appropriate under the "similarly situated" standard set forth in *Scott*.  Plaintiffs have presented at least some evidence supporting that they "are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based," including the outside sales exemption, and that they "are classified as exempt pursuant to a common policy or scheme." *Myers*, 624 F.3d at 555.

To be sure, in applying the *Scott* standard, the Court is not making any judgments with respect to whether Plaintiffs were actually exempt.  Even taking as true Plaintiffs factual assertion that they spent the vast majority of their work at home, a branch, or fixed location, Plaintiffs may be incorrect as a legal matter that this fact disqualifies them from the "outside sales" exemption.  That is a merits question that the Court is not to resolve at this juncture. *Pippins v. KPMG LLP*, No. 11-CV-0377, 2012 WL 19379, at *6 (S.D.N.Y. Jan. 3, 2012).  It is sufficient that Plaintiffs' have presented some evidence showing that their job duties were substantially similar and that the nature of those particular job duties is material to resolving Plaintiffs' FLSA claims one way or the other.

Similarly, the Court is also not accepting as true Plaintiffs' factual assertions that they spent the "vast majority" of their time working at those places.  While the sworn declarations

23

submitted in support of this motion satisfy the "modest factual showing" required at this stage,

*Myers v. Hertz Corp.*, 624 F.3d at 555, discovery may show that Plaintiffs sworn statements in

these boilerplate documents were misleading or unreliable.  The Defendant has submitted

previous sworn declarations from Plaintiffs during their employment with TIAA Bank that

Defendant claims overtly contradict their testimony in support of this motion.  However, at this

stage, the Court is not to consider countervailing evidence that might contradict the sworn

declarations or make credibility assessments.  *See Cunningham*, 754 F. Supp. 2d at 644.

Plaintiffs sworn declarations alone are sufficient to support conditional certification.  *Id.*

### C.  Conditional certification is not appropriate for any other employee

In addition to the RLOs, Plaintiffs seek to include the positions of "Branch Sales

Manager" and "Retail Sales Manager" in their conditional collective.  While Plaintiffs have

satisfied their burden with respect to the RLOs, Plaintiffs have not done so as to these other

positions.  Plaintiffs did not submit any declarations from a plaintiff or opt-in plaintiff who

worked as a Branch or Retail Sales Manager nor did they submit any other evidence that

potential plaintiffs who worked in these positions are similarly situated.  The Court therefore

cannot determine that these positions "share a similar issue of law or fact material to the

disposition of [Plaintiffs'] FLSA claims."  *Scott*, 954 F.3d at 516.

### D.  Notice

Lastly, Plaintiffs request that the Court facilitate notice to individuals who worked for

Defendant at any time during the time period of December 1, 2016 through April of 2019.

Although Plaintiffs admit that these individual's claims would otherwise be time-barred, they

argue that those individuals might be subject to equitable tolling as a result of Defendant's

potential failure to post wage and hour notices.  This Court has previously endorsed this

approach in situations where the plaintiffs alleged a basis for equitable tolling in the complaint. *See Gaspar v. Pers. Touch Moving, Inc.,* No. 13-CV-8187 AJN, 2014 WL 4593944, at *1, 7 (S.D.N.Y. Sept. 15, 2014).  However, it is not appropriate here.  As discussed in this opinion, Plaintiffs have not asserted any factual allegations supporting the application of equitable tolling.

Within two weeks of this Memorandum Opinion & Order, the parties are to confer on Plaintiff's proposed notice and submit a joint letter to the Court on whether there are any outstanding issues.

### E.  Summary

For the reasons discussed above, the Court holds that conditional certification is appropriate for Plaintiffs who worked as RLOs.  The Court will not include Branch Sales Manager or Retail Sales Manager in the conditional collective.  Moreover, Plaintiffs are not permitted to send the proposed notice to individuals whose claims would be time-barred but for equitable tolling.

## V.   CONCLUSION

For the reasons discussed in this opinion, Defendant's partial motion to dismiss certain claims as time-barred is GRANTED. Defendant's motion to compel arbitration is GRANTED. Plaintiffs' motion for conditional certification of a FLSA collective is GRANTED.  This resolves Dkt. Nos. 39, 59, 70, 83, 94 and 111.   The Court ruled on Defendant's "Motion to Cease and Desist" with an oral ruling at the conference on December 9, 2020, *see* Dkt. No. 107, and Dkt. No. 48 is therefore resolved.

The parties are to confer on a proposed notice and within two weeks of this Opinion and they shall jointly submit the proposal to the Court for approval.  At the same time, the parties shall provide the Court with an update on the status of discovery.

SO ORDERED.

Dated:  September 14, 2021
     New York, New York

_____
ALISON J. NATHAN
United States District Judge